EPPERSON *v.* BUCK INV. CO.

*(Jackson,* April Term, 1940.)

Opinion filed June 29, 1940.

PIGFORD & KEY, of Jackson, for complainant.

HUGHLON AKIN, of Jackson, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

From a decree overruling its demurrer to the bill, the defendant has appealed.

The bill was filed by the brother and heir of Mrs. Nannie Epperson Bass, domiciled in Louisiana and dying in that State November 28, 1932. The complainant asserts title to certain lands in Madison County and Crockett County, Tennessee, of which his sister died seized and possessed.

Mrs. Bass died testate and her will was probated in Louisiana but, according to the bill, it was insufficiently probated as a holographic will to pass title to lands in

this State. She devised all her property to her husband for life and at his death said property to "at once vest in and be owned in fee" by his son. The husband and son conveyed the Tennessee lands to defendant Buck Investment Company.

A certified copy of the probate proceedings in Louisiana was presented to the county court of Madison County and such probated will was admitted to probate by the county court of Madison County under sections 8113-8117 of the Code, hereafter set out. All requirements of these sections as to notice, etc., were strictly followed.

The bill seeks to have the probate proceedings in Madison County declared null and void and such proceedings and the deed from Bass and his son to defendant Buck Investment Company removed as clouds on complainant's title. And, in the alternative, if not entitled to this relief, the bill seeks for a construction of the will and for a declaration, upon the construction sought, establishing complainant's title to the lands.

The will of Mrs. Bass is as follows:

"Know all that I Nane (*sic*) Epperson Bass do make, declare, and publish this to be my last will and testament.

"First I direct that all my just debts and furnal (*sic*) expenses be paid.

"Seccond (*sic*) I give devise and bequeath onto (*sic*) my husband B. A. Bass all propity (*sic*) owned by me at the time of my death, be the same real, personal or mixed, wherever the same may be situated, for and during the term of his natural life, at his death the said property and all of it, shall at once vest in and be owned in fee by Daniel Nelson Bass, the son of the said B. A. Bass.

"Third, I name and appoint (*sic*) my said husband B. A. Bass the executors (*sic*) of this my last will and testa-

ment, he to serve and act as such without bond or security of any kind.

"Nannie Epperson Bass.

"Signed, published and declared by the said Nannie Epperson Bass, to be her last will and testament in our present, and in witness whereof we at her request, and in her present, and in the presence of each other have as attesting witnesses subscribed our names hereto on this————.

"This done executed and sign— by me entirely in my own handwriting.

"January 6, 1930

"Nannie E. Bass.

"Witness:

"Frances M. LaFavor

"Mrs. C. A. Rowan."

The order of the Louisiana court admitting the will to probate, omitting formal parts, recites that the instrument was presented by F. M. LaFavor and John C. Voorhees, witnesses, and after describing the will as one purporting to be the "olographic last will and testament" of the testatrix proceeds "which being by me exhibited to the aforesaid witnesses was by them recognized and declared to be entirely written, dated and signed by the testatrix, the said Nannie Epperson Bass, which they attest as having often seen her write and sign during her life time and that the said appearers did hereunto set their hands after due reading hereof on the day, month and year first above written.

"F. M. LaFavor

"John C. Voorhees"

The argument for complainant is that the order of the probate court in Louisiana shows that this will was probated as a holographic will but it does not appear that

the handwriting of the testatrix was proved by three witnesses, nor that the paper writing was found among the valuable papers of testatrix nor lodged with another for safe-keeping, and that accordingly such will was ineffective to pass title to lands in Tennessee under section 8090 of the Code.

■ We think this will was probated as a holographic will, although one of the attesting witnesses to the will seems to have been examined. That is, if F. M. LaFavor and Frances M. LaFavor are the same person. Nevertheless, as the order indicates, both witnesses were testifying to the signature and handwriting of Mrs. Bass, rather than the *factum* of this will. They could not have meant to say that they had "often" seen her write and sign this particular will.

This will being probated as a holopraphic will in Louisiana, not in compliance with the provisions of section 8090 of our Code, complainant insists that the will was not entitled to probate in this jurisdiction and the order of the Madison County court admitting it to probate was null and void.

That the will of Mrs. Bass was probated in Louisiana as a holographic will and not as a witnessed will is made plain by a comparison of section 1655 of the Louisiana Civil Code with the proceedings in the Louisiana court respecting this will. That section of the Code is as follows:

"The olographic testament shall be opened, if it be sealed and it must be acknowledged and proved by the declaration of two credible persons, who must attest that they recognize the testament as being entirely written, dated and signed in the testator's handwriting.

"The judge shall interrogate the witnesses under oath touching their knowledge of the testator's handwriting

and signature and shall satisfy himself that they are familiar therewith making mention of the whole in his proces verbal thereof.''

Section 1648 of the Louisiana Civil Code, dealing with what is there called a nuncupative will under private signature—a witnessed will—provides:

''Nuncupative testaments under private signature can not be executed until they have been proved by the declaration on oath of at least three of the witnesses, who were present when they were made.''

This brings us to a consideration of sections 8113 et seq. of the Code based on chapter 77 of the Pub. Acts of 1919. This Act was adopted as a Uniform Statute. It has been enacted in several States but so far as we are able to discover has been little construed in those States. We find no decision dealing with the question here raised. Sections of the Code embodying this Act are as follows:

''8113. A will, duly proved, allowed and admitted to probate out side of this state, may be allowed and recorded in the proper court of any county in this state, in which the testator shall have left any estate.

''8114. When a copy of the will and the probate thereof, duly authenticated, shall be presented by the executor or by any other person interested in the will, with a petition for probate, the same must be filed and a time must be appointed for a hearing thereon and said notice must be given, as required by law on a petition for the original probate of a domestic will.

''8115. If upon the hearing, it appears to the satisfaction of the court that the will has been duly proved, allowed and admitted to probate outside of the state, and that it was executed according to the law of the place in which the same was made, or in which the testator was

at the time domiciled, or in conformity with the laws of this state, it must be admitted to probate, which probate shall have the same force and effect as the original probate of a domestic will.''

The contention of the defendant, based on section 8115 above, is that this will was duly admitted to probate in Louisiana, that it was executed according to the law of Louisiana, where the testatrix was at the time domiciled, and having been executed according to the law of the place where it was made, the will was accordingly entitled to probate in this State. That, under the laws of Louisiana, a holographic will, executed and proved as this was, is sufficient to pass title to realty in Louisiana, and, under the statute, being entitled to reprobate here, is likewise sufficient to pass title to real property in this State.

The court thinks that defendant correctly interpreted the intention of the legislature in enacting chapter 77 of the Pub. Acts of 1919. As stated, the statute was one of the Uniform Series. The design of the statute was to make a will executed according to the law of the place in which the same was made, and duly probated there, entitled to probate in this State, and as effective here as in the State of its execution and probate.

The Act of 1919 would be without any effect, if we yielded to the argument of the complainant, and held this will only good as a will of personalty. It was good as a will of personalty prior to the adoption of the statute. *Kirkland* v. *Calhoun*, 147 Tenn., 388, 248 S. W., 302.

Section 8116 of the Code, section 4 of chapter 77 of the Pub. Acts of 1919, provides for the probate in this State of an authenticated copy of an unprobated will from a State or country not requiring probate, and section 8117 of the Code, section 4 of chapter 77 of the Pub. Acts of

1919, provides, it appearing to the court that the instrument ought to be allowed, that the copy shall be filed and recorded.

■ Section 8118 of the Code provides "Any person interested to contest the validity of such will as to realty may do so in the same manner and time limit as though it had been originally presented for probate in said court." We think section 8118 has reference to unprobated wills from other jurisdictions, not to wills properly executed and probated according to the laws of another State.

■ The complainant asks the court to construe the will of Mrs. Bass, if of opinion that such will was entitled to reprobate here as a will of real estate. The complainant argues that the son of the testatrix took only a contingent remainder in the realty devised—contingent upon surviving his father, and the bill avers that his father survived him. The will has been heretofore set out and, under decisions of this court reviewed in *Maynor* v. *Vaughn,* 159 Tenn., 281, 17 S. W. (2d), 910, the remainder was vested, not contingent.

Such being our views of the matter, it follows that the decree of the chancellor must be reversed and the bill dismissed.

In *Re De Franceschi's Estate,* 17 Tenn. App., 673, 70 S. W. (2d), 513, the propriety of the limitation of the probate of the will as a will of personalty only does not seem to have been controverted in the Court of Appeals.